UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GAETANO J. MILANO | ) | MASTER DOCKET NO. |
| | ) | 2:90CR18(AHN) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | SEPTEMBER 21, 2005 |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
RENEWED MOTION FOR LEAVE TO CONDUCT DISCOVERY
RELATING TO THE GOVERNMENT'S
PRE-TRIAL CONFIDENTIAL INFORMANT NON-DISCLOSURE

## I. INTRODUCTION

On or about April 6, 2004, the petitioner, Gaetano Milano, moved the Court for

permission to serve discovery upon the Government related to the Government's pretrial denial

that any of its informants were percipient witnesses to the William Grasso homicide.  The

proposed discovery included interrogatories, requests for admission and production requests.  In

a Ruling filed on or about September 22, 2004, the Court recognized that, notwithstanding the

Government's protestations to the contrary, Mr. Milano had "made a satisfactory showing of

good cause" that Angelo Mercurio, a Top Echelon Information for the Government at the

relevant time, was a participant in and key witness to the homicide of William Grasso.  (Ruling

on Motion to Leave to Conduct Discovery, September 22, 2004, p.5. ("Ruling")).  As a result of

its analysis, the Court permitted Mr. Milano to submit two interrogatories to the Government to

probe the basis for the Government's pretrial statement that no informants were percipient

witnesses to the Grasso homicide, which interrogatories the Government answered on

September 27, 2004.  (Government's Response attached as Exhibit A hereto (hereinafter

"Interrogatory Response")).

The Court recited in its ruling the deposition testimony of Massachusetts Superior Court

Judge Diane Kottmyer in which Judge Kottmyer stated, among other things, that (1) Mr.

Mercurio was a target of the grand jury investigation into the Grasso homicide, (2) Judge

Kottmyer believed that Mr. Mercurio had information that would have been valuable in the

prosecution for the Grasso homicide and that Judge Kottmyer believed that Mr. Mercurio was a

participant in and a key witness to the Grasso homicide. Id. at p.3.  The Court also noted Mr.

Milano's presentation to this Court of Judge Wolf's opinion in United States v. Salemme, 91 F.

Supp. 2d 141, 269 (D. Mass. 1999), in which Judge Wolf concluded that Mr. Mercurio was

involved in the Grasso homicide and in which Judge Wolf found significant corruption and

treachery with respect to the Government's handling of Mr. Mercurio and other confidential

informants. See Ruling at p. 4.  Finally, the Court recognized in its Ruling the fact that Mr.

Mercurio, because of his concern of self-incrimination, refused to testify substantively about his

involvement in the Grasso homicide when the Petitioners were permitted to take his deposition,

again over the government's objection. Id. at p. 4-5.

In the interests of judicial economy, Mr. Milano hereby incorporates by reference his

Memorandum in Support of His Motion for Leave to Conduct Discovery Relating to the

Government's Pre-Trial Confidential Informant Non-Disclosure dated April 6, 2004 ("Initial

Memorandum"). The arguments in that memorandum, which led to the Court to permit the

initial, two interrogatories, apply in full force to this Renewed Motion for Discovery. In this

memorandum, Mr. Milano amplifies on the good faith basis for additional discovery based both

on the Government's response to the two interrogatories that have been permitted and based on

the Government's statements in the re-sentencing proceedings of Vincent Ferrara in Boston last

spring, the transcript of which Mr. Milano's counsel just received. In the accompanying motion,

Mr. Milano has restricted his proposed discovery to Requests for Admission (which he has

narrowed from those that he previously submitted)—he does not renew his request to submit

additional interrogatories or production requests.

## II.    DISCUSSION

### a.    The Government Has Been Relentless In Its Opposition To Discovery Regarding Its Pretrial Failure To Disclose Angelo Mercurio As A Percipient Witness.

At every step of the way, the Government has aggressively and doggedly fought every

effort by the Petitioners' to conduct discovery and to shed light on the basis for the Government's

pretrial disclosure that none of its informants were percipient witnesses to the homicide of

William Grasso. The Government fought the Petitioners' request for documents, it fought their

request to depose now Superior Court Judge Kottmyer, it fought their request to depose Angelo

-3-

"Sonny" Mercurio, it fought their request to serve interrogatories, requests for admission and

production requests and the Petitioners now expect that the Government will fight this renewed

request to serve Requests for Admission. The reason for the Government's opposition is

manifest: when the petitioners have been permitted to conduct the requested discovery over the

Government's vehement objection, in every instance it has revealed that the Government's

pretrial disclosure that no informants were percipient witnesses to the Grasso homicide was false.

The Government's stubbornness in the face of the evidence that the Petitioners already

have adduced informs this Court of the Government's motive: the Government knows that if the

United States Attorney's Office for the District of Connecticut ("Connecticut Office") admits the

falsity of its pretrial denial that no informants were percipient witnesses, it will entitle Mr.

Milano, at a minimum, to a resentencing and likely to a new trial. As a result, the Connecticut

Office has persisted in its baseless denial while all of the relevant parties, including the Boston

Organized Crime Strike Force, have revealed Mr. Mercurio's status as a percipient witness. The

Requests for Admission that Mr. Milano now moves to serve will permit the Connecticut Office

to finally admit Mr. Mercurio's status as a percipient witness or the Requests for Admission will

lock the Connecticut Office into its untenable position and facilitate the resolution of this issue,

perhaps by summary judgment.

### b. The Government's Opposition To Discovery Is Baseless.

#### i. The Government's Own Reports Reveal Mr. Mercurio's Involvement in the Grasso Homicide.

As set forth in detail in Mr. Milano's Initial Memorandum, the documents that the

Petitioners have obtained over the Government's objection reveal that before Mr. Grasso's

homicide, the Boston FBI, including now imprisoned, former Special Agent John Connolly,

knew that there was warfare breaking out in La Cosa Nostra ("LCN") between a faction in

Providence and a faction in Boston. Initial Memorandum, p. 22.[1] In particular, the Government

had obtained information from Mr. Mercurio before the Grasso homicide that the two factions

were formulating plans to "take out" and "clip" each other. See id. and fn.7. Unquestionably,

because of Mr. Mercurio's role in the Boston faction of LCN, the Government knew that Mr.

Mercurio was involved in the planning for the factional warfare and in the homicide of Mr.

Grasso.

#### ii. Judge Kottmyer Has Testified Twice as to Mr. Mercurio's Role.

While the FBI's own documents imply Mr. Mercurio's involvement in the Grasso

homicide, Mr. Mercurio's role was confirmed specifically in the deposition testimony in this case

of now Massachusetts Superior Court Judge, and then Boston Organized Strike Force Chief,

Diane Kottmyer, who stated that she viewed Mr. Mercurio as a "target," "participant" and "key

---

1 Indeed, Mr. Milano maintains that Agent Connolly and other corrupt public officials fomented the factional warfare for the benefit of themselves and their acquaintances.

witness" in the Grasso homicide. Initial Memorandum, p. 12. Judge Kottmyer also testified that

Mr. Mercurio had "taken part in overt acts" in the conspiracy to kill Mr. Grasso, as well as in a

conspiracy to kill Frank Salemme. Id. at 13. Judge Kottmyer testified further that the Boston

LCN faction, also known as the Russo faction (which included, among others, Mr. Mercurio and

Vincent Ferrara), was "behind the murder of Mr. Grasso." Id. at 11-12. Judge Kottmyer also

testified in proceedings before United States District Judge Mark Wolf on this same issue, and

there she testified that Mr. Mercurio had "significant knowledge" about the Grasso homicide,

was a "key witness" and "participant" in the homicide and that she viewed him as a "defendant."

Id. at 14-15.

In these §2255 proceedings, when faced with this compelling evidence that Mr. Mercurio

was a participant in the Grasso homicide at the same time that he was a Top Echelon Informant,

and in opposition to the discovery that the Court ultimately ordered over that objection last

September, the Government baldly claimed that the Petitioners had "grasp[ed] at testimony by

Judge Kottmyer taken out of context." Government Opposition Memorandum dated June 25,

2004, p. 6 ("Government's June 2004 Opposition"). Amazingly, despite Judge Kottmyer's

testimony, the Government claimed that there was "***no evidence*** that [Mr. Mercurio] was a

participant or key witness to the Grasso homicide." Id. at 20.

### iii.  Mr. Mercurio Refused to Testify About His Role Because He Would Incriminate Himself.

The Government then had to deal with the deposition testimony of Angelo Mercurio,

which deposition also occurred in this case over the Government's objection. Out of concern

that any substantive testimony would incriminate himself, Mr. Mercurio refused to answer any

question about the Grasso homicide and about whether he had informed the Government of his

role in that homicide. Once again, however, despite Mr. Mercurio's refusal to testify, the

Government claimed in these proceedings that there was *"**no evidence**"* of Mr. Mercurio's

involvement in the Grasso homicide. Id. (emphasis added).

### iv. Judge Wolf Specifically Found Mr. Mercurio's Involvement.

In the proceedings before this Court, the Government engaged in more obfuscation when

faced with the judicial findings of United States District Judge Mark Wolf, including Judge

Wolf's finding that the Boston FBI "arrogated to itself the decision to continue to utilize

Mercurio as an informant despite the fact that it was believed that he had, while an FBI

informant, been involved in [the Grasso] murder and [Salemme] attempted murder." Initial

Memorandum, p. 16 (quoting United States v. Salemme, 91 F. Supp. 2d 141, 269 (D. Mass.

1999)). Rather than acknowledging for this Court and for these Petitioners Mr. Mercurio's role

in the Grasso homicide, the Government once again claimed that the Petitioners' request for

discovery had *"**no basis**"* and attempted to direct this Court to the Court's extemporaneous

conversation with Judge Wolf in which Judge Wolf apparently did not recall his published

finding of Mr. Mercurio's role in the Grasso homicide. Government's June 2004 Opposition, p.

23 (emphasis added). The Government's tactic in this regard obviously was misguided in light

of Judge Wolf's published findings, Judge Kottmyer's testimony, the Government's own FBI

reports and Mr. Mercurio's refusal to answer questions about the Grasso homicide.

The Government's misguided tactic is revealed even more clearly in the re-sentencing transcript of Vincent Ferrara, discussed below and attached as Exhibit B, in which Judge Wolf once again admonished the Government for its treachery generally and its treachery with specific regard to Mr. Mercurio.  Judge Wolf reminded the Government that its agents had tipped off Mr. Mercurio so he could become a fugitive from indictment, during which time on the lam, Mr. Mercurio sold drugs and subsequently was arrested.  Ferrara Re-Sentencing Transcript, p. 164. Judge Wolf also reminded the Government that when Mr. Mercurio was returned to Massachusetts after his arrest for drug dealing, the Government "mislead[] [Judge Wolf] so [Mr. Mercurio] gets essentially concurrent time, no time."  The Petitioners respectfully suggest that perhaps it was the Government's persistent misrepresentations to Judge Wolf and its and "egregious prosecutorial misconduct" that led Judge Wolf to misspeak in his extemporaneous conversation with this Court about Mr. Mercurio's role.  See Ferrara Re-Sentencing Transcript, p. 15 (Judge Wolf's comments).  In any event, it is clear that Judge Wolf specifically found Mr. Mercurio to have been involved in the Grasso homicide.  Salemme, 91 F. Supp. at 269.

   c.  **The Government Has Once Again Acknowledged Mr. Mercurio's Culpability In The Grasso Homicide, Despite Its Inconsistent Position In This Case.**

Even though Mr. Milano suggests that there can be no question of Mr. Mercurio's role in the Grasso homicide, and of the falsity (whether inadvertent or intentional) of the Government's

pretrial denial of Mr. Mecurio's status in this matter, the re-sentencing proceedings of Mr.

Ferrara before Judge Wolf last May eliminated all possible doubt. Further, the Organized Crime

Strike Force's position with regard to Mr. Mercurio as stated unequivocally in those proceedings

reveals that the Government's previous claim in this case that the Petitioners have used Judge

Kottmyer's testimony out of context is baseless.

In the re-sentencing proceedings, the Government was arguing for the continued

incarceration of Mr. Ferrara after Judge Wolf had granted Mr. Ferrara's § 2255 petition and

ordered his resentencing based on the Government's violation of Mr. Ferrara's rights for failing

to disclose clearly exculpatory information to Mr. Ferrara in pretrial proceedings. Ferrara Re-

Sentencing Transcript, pp. 5-8; see generally Ferrara v. United States, 2005 U.S. Dist. LEXIS

1646 (April 12, 2005 D. Mass.)(attached as Exhibit C). In arguing for Mr. Ferrara's continued

incarceration, the government claimed that the involvement of Mr. Ferrara and the Boston faction

of LCN in the Grasso homicide should be considered relevant conduct and evidence of Mr.

Ferrara's dangerousness. Id. at 33.

During the re-sentencing proceedings and the Government's argument that Mr. Ferrara

should remain incarcerated because of his involvement in the Grasso homicide, the Government

initially failed to mention Mr. Mercurio's role in the Grasso homicide.[2] In light of the failure of

---

2 Mr. Milano suggests that the failure to mention Mr. Mercurio was not an oversight because the Government
unquestionably is aware of the tension between the District of Connecticut's denial of Mr. Mercurio's involvement
and Boston Strike Force's base of knowledge about Mr. Mercurio—all in the fusion of Mr. Milano's § 2255 petition.

the Government to raise Mr. Mercurio's role, Judge Wolf was required to probe the Government

on the issue. While Assistant United States Attorney James Herbert was describing the roles and

culpability in the Grasso homicide of other members of the Boston faction, specifically Messrs.

Ferrara, Russo and Carrozza, Judge Wolf was compelled to inquire: "What about Mercurio?"

Forced to respond, Mr. Herbert stated, "Mercurio would have been liable as well." Ferrara Re-

Sentencing Transcript, p. 64.[3]

Mr. Milano respectfully suggests that any claim by the Connecticut Office that this direct

answer to a direct question is taken out of context, like it claimed with Judge Kottmyer, would be

specious. More to the point, a continued claim that Mr. Mercurio was not a percipient witness to

the Grasso homicide would be frivolous.

### d. The Government's Response To The Court-Ordered Interrogatories Continues Its Pattern of False Denial and Obfuscation.

In its response to the Court-ordered interrogatories, the Government continued its denial

that Mr. Mercurio was involved in the Grasso homicide, albeit implicitly. See generally

Interrogatory Response. The response is more notable for what it does not say than what it says.

---

3 In an ironic twist, Mr. Herbert at one point in the Ferrara proceedings drew a distinction between Mr. Milano and
Mr. Ferrara and he contrasted the continued dangerous of the two individuals. Mr. Herbert stated:
"So I would say that that certainly goes to the fact that [Mr. Ferrara] remains part of this organization, not
only in letter, but in spirit.
I do want to - - I will play this conversation,your Honor, but I do want to tender to the court in connection
with dangerousness, before I forget, the copy of the sentencing transcript for one of the defendants in the Connecticut
case, the Bianco case, and that is Guytano [sic] Milano who, as the court may recall, stood up at his sentencing and
renounced his membership in what he called this evil organization and, in the context of it, admitted his role in the
murder of Billy Grasso." Ferrara Re-Sentencing Transcript, pp. 134-35.

The response never mentions Mr. Mercurio and the response reveals that the entire basis for the pretrial denial of Mr. Mercurio's involvement in the Grasso homicide apparently was (1) information provided by two lower-level informants and (2) a review of the affidavit supporting the roving bug of the LCN induction ceremony in this matter. See id. Further, the response does not state definitively whether anyone from the Connecticut Office ever asked for or received any information from the Boston Strike Force about Mr. Mercurio or about his role in the Grasso homicide, nor does it even clarify whether the Connecticut Office knew that Mr. Mercurio was an informant. See id. The response also does not clarify whether anyone from the Connecticut Office knew the identity of "CS-1" or "CS-3" when it flatly denied that either of them were involved in the Grasso homicide. See id.     In short, the response simply repeats the same story that the Connecticut Office has been telling this Court, which story completely omits Mr. Mercurio. The response offers only that the pretrial denial was based on a reading of the roving bug affidavit (not an interview with its author) and the tales of two informants who were at a lower level in the LCN structure, presumably with less knowledge, than Mr. Mercurio. Respectfully, like Judge Wolf was compelled to do in the Ferrara proceedings, Mr. Milano suggests that this Court should ask the Government, through the proposed Requests for Admissions, "What about Mercurio?" Ferrara Re-sentencing Transcript, p. 64.[4]

---

4 Interestingly, the Interrogatory Response does note that "the Boston faction" of LCN "secured the cooperation of Gaetano Milano and Louis Failla in murdering William Grasso in Connecticut." Interrogatory Response, p. 3. While the Interrogatory Response, as part of the Connecticut Office's implicit denial,  only references Joseph Russo, Vincent Ferrara and Robert Carrozza from the Boston faction, Judge Kottmyer and Mr. Herbert both included Mr. Mercurio in their descriptions of the Boston faction. Initial Memorandum, pp.11-12

Additionally, the Government's reliance on the roving bug application for its pretrial denial of Mr. Mercurio's role must, by itself, be called into question. Judge Wolf has now concluded that because of the government's subterfuge, he *"erroneously* found that the government did not mislead the judge who issued the roving order." See Ferrara v. United States, 2005 U.S. Dist. LEXIS 16466 at \*19 (D. Mass. April 12, 2005). The roving bug application made no mention of Mr. Mercurio and Judge Wolf has now specifically found that the failure to mention Mr. Mercurio was part of the government's deceit and treachery in its devious efforts to conceal the identity of its informants.[5] Id. at \*47-\*57.

Mr. Milano respectfully suggests that the failure to disclose Mr. Mercurio's role in this case is part of the same deceit and treachery that Judge Wolf found--all designed to illegally prevent the disclosure of Mr. Mercurio's status as an informant and to continue the corrupt relationship between the Boston FBI and its informants. Indeed, based on Judge Wolf's recent findings that he "erroneously found that the government did not mislead the judge who issued the roving order," id. at \*19, Mr. Milano will be asking this Court to address the claim in his § 2255 petition that the recording of the LCN Induction Ceremony that was obtained as a result of the

---

(quoting Judge Kottmyer's testimony); Ferrara Re-sentencing Transcript, p. 64.

5 In a recent United States Department of Justice, Office of the Inspector General Report, the OIG noted a systematic issue regarding FBI agents' resentment toward disclosing the identities of their informants. The agents ranked the issue as their third greatest concern in working under the Department's Confidential Informant Guidelines. The Federal Bureau of Investigation's Compliance with the Attorney General's Investigative Guidelines., September 2005, p. 114. (available on-line at http://www.usdoj.gov/oig/igspecr1.htm). The Inspector General reported that some agents claim to "own" their informants and resent having to disclose their identity. Id. at

roving bug order should have been suppressed.

### e.  There Is Good Cause For Mr. Milano's Proposed Requests For Admission.

The facts as set forth above, and as set forth in the Initial Memorandum, establish good

cause for discovery on this percipient witness issue.  The Connecticut Office's continuing denial

that Mr. Mercurio was a percipient witness and the Connecticut Office's insistence that its

pretrial nondisclosure was accurate is baseless.  Because the Connecticut Office will not concede

what other segments of the Government admit, including Judge Kottmyer as a former Strike

Force Chief and Mr. Herbert as a current Strike Force member, the Connecticut Office has

created a fog around this percipient witness issue.  Mr. Milano submits that his proposed

Requests for Admission will lift the fog.  The Connecticut Office will be forced to admit or deny

what the Strike Force has conceded—that Mr. Mercurio was a key witness to and participant in

the Grasso homicide.  Mr. Milano has crafted his proposed Requests for Admission around the

terminology that the Connecticut Office used in its pretrial non-disclosure and around the

language that the Strike Force members have used in the other discovery in this matter.  Once the

Connecticut Office has crystallized its position in relation to the discovery that has occurred to

date, Mr. Milano can present this issue to the Court for resolution, which Mr. Milano submits

will entitle him, at a minimum, to a resentencing and which, thereby, may alleviate the need for

further litigation of this § 2255 petition.

---

132.  The report cites the corruption and misdeeds of the Boston FBI as a catalyst for the OIG's investigation.  See

## III.    CONCLUSION

For the foregoing reasons, Mr. Milano's renewed motion to conduct discovery should be granted.

PETITIONER, GAETANO J. MILANO

By_____
Craig A. Raabe
Federal Bar No. ct 04116
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT  06103
E-Mail: craabe@rc.com
Telephone:  (860) 275-8200

generally id.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, via first-class mail, postage

prepaid, on this 21st day of September, 2005, to the following counsel of record:

John M. Thompson, Esq.
Thompson & Thompson PC
1331 Main Street, Suite 320
Springfield, MA  01103

Vincent Bongiorni, Esq.
95 State Street
Springfield, MA 01103

Michael A. Fitzpatrick, Esq.
Park City Plaza
10 Middle Street, 11t Floor
Bridgeport, CT  06604

James K. Filan, Jr., Esq.
United States Attorneys Office
915 Lafayette Boulevard
Bridgeport, CT  06604


_____
Craig A. Raabe