UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOUIS PUGLIANO                    :

     v.                              :          CIVIL NO. 3:95CV1171(AHN)
                                             CRIM. NO. H-90-18(AHN)
UNITED STATES OF AMERICA         :
_____

FRANK PUGLIANO                    :

     v.                              :          CIVIL NO. 3:95CV1330(AHN)
                                             CRIM. NO. H-90-18(AHN)
UNITED STATES OF AMERICA         :
_____

GAETANO J. MILANO                 :

     v.                              :          CIVIL NO. 3:95CV1145(AHN)
                                             CRIM. NO. H-90-18(AHN)
UNITED STATES OF AMERICA         :
_____


RULING ON PETITIONERS' JURY COMPOSITION CLAIM

_____There are two issues presently before the court in this
habeas corpus action under 28 U.S.C. § 2255.  One is substantive:
whether the petitioners' fair cross-section rights under the
Sixth Amendment and the Jury Selection and Service Act of 1968,
28 U.S.C. § 1861 et seq. (JSSA), were violated by systematic
underrepresentation of African-Americans and Hispanics in the
qualified wheel from which their petit jury was selected.  The
other is procedural: because the petitioners did not timely
raise their jury composition claim before trial, the court must
first determine whether the petitioners have shown cause for the
procedural default of the claim and actual prejudice resulting
from the alleged constitutional violation.  Unless the procedural

hurdle is satisfied, the court cannot consider the substantive issue.

For the following reasons, the court concludes that the petitioners have failed to establish the required cause and prejudice and accordingly denies the petitioners' habeas petition on this claim without considering it on the merits.

## BACKGROUND

The petitioners' petit jury was selected in Hartford, Connecticut in April 1991. The petitioners did not make any challenge to the racial composition of the master wheel or qualified wheel from which their petit jury was drawn, either before jury selection or trial. After they were convicted, and while their appeals were pending, they learned that defendants in another criminal case in the District of Connecticut had successfully challenged the racial composition of the master and qualified wheel in the Hartford division. See United States v. Osorio, 801 F. Supp. 966 (D. Conn. 1992).

In Osorio, counsel for the defendants made a pre-trial challenge under the JSSA and the Fifth and Sixth Amendments to the District's jury-selection process. In connection therewith, in August 1992, they reviewed the juror questionnaires in the qualified wheel for the Hartford division, the source of prospective jurors for all grand and petit jury venires in the Hartford seat of court. In so doing, they discovered that, over

-2-

the life of the then-current master wheel, not one juror
questionnaire had been mailed to anyone who resided in Hartford
and New Britain.  Those two cities were the largest cities in the
Hartford division and constituted approximately one-sixth of the
total population of the division and two-thirds of the division's
minority population.  See id. at 969-71.[1]  As a result of the

_____

[1]As explained in Osorio, according to the District of
Connecticut Plan for the Random Selection of Grand and Petit
Jurors adopted in the fall of 1989, the master wheel for each of
the three divisions in the judicial district was to be comprised
of substantially ten percent of the registered voters from each
town in each division, randomly drawn.  The Hartford division was
comprised of 84 towns in Hartford, Litchfield, Tolland, and
Windham counties. In the period 1989-1992, the master wheel for
the Hartford division contained approximately 68,000 names.
Twice a year, approximately 1,500 names from the master wheel
were randomly selected and juror questionnaires were sent to
those individuals.  When the questionnaires were returned to the
Clerk, they were reviewed to determine the persons who were
qualified for jury service.  Those not qualified were excluded.
The names of those who were qualified for jury service were put
in the qualified wheel.  Names were randomly selected from the
qualified wheel when juries were needed.  See Osorio, 801 F.
Supp. at 969-71.
     When counsel for the defendants in Osorio analyzed the juror
questionnaires in the Hartford qualified wheel, they discovered
that over the life of the then-current master wheel, 4,631
questionnaires were mailed to prospective jurors, but not one
questionnaire was mailed to anyone residing in either New Britain
or Hartford, the two largest cities in the Hartford division
accounting for 16.61% of the division's total population.  In
connection with the District's investigation into the cause of
this exclusion it was discovered that in October 1989, when the
non-court affiliated individual at the Yale University Computer
Center who had an arrangement with the District to build and
maintain the master and qualified wheels, entered the names he
received from the Clerk to construct the master wheel, he
neglected to enter the names of the registered voters from New
Britain.  Although he entered 5,500 names of registered voters
from Hartford, out of the 4,631 names randomly drawn from that
master wheel from the date of its creation to August 1992, not

exclusion of Hartford and New Britain residents, the district court found that African-Americans and Hispanics were underrepresented in the Hartford qualified wheel from which the Osorio grand jury had been drawn, but based on an absolute impact analysis,[2] concluded that the level of underrepresentation was not sufficient to establish a fair cross-section violation. However, because of the lack of random selection in the compilation of names for the qualified wheel and the systematic exclusion of African-American and Hispanic residents of Hartford and New Britain as a source of those names, the court found that

---

one Hartford resident was selected to receive a jury questionnaire. See id. at 972-73. At the time of the decision in Osorio, there was no plausible explanation for these omissions. It was subsequently discovered that "no jury questionnaires were sent to Hartford residents because a computer programming error had caused the 'd' in 'Hartford' to communicate to the computer that all potential jurors from Hartford were deceased and thus unavailable for jury service." United States v. Jackman, 46 F.3d 1240, 1242-43 (2d Cir. 1995). No explanation was ever given for why the names of New Britain residents were not entered into the master wheel. See id. It was also later learned that no questionnaires were sent to registered voters in 25 other municipalities in the Hartford division. In sum, 27 of the 84 towns in the division were not represented in the Osorio qualified wheel.

[2] The 1990 census indicated that 6.34% of the voting-age population in the Hartford division was African-American and 5.07% was Hispanic. Based on actual data, the Osorio qualified wheel was comprised of 1,779 individuals, of which 1,687 specified their race and/or ethnicity. Of those 1,687 names, 52, or 3.08%, were African-American and 13, or 0.77%, were Hispanic. Thus the effect of omitting Hartford and New Britain residents was to reduce the percentage of voting-age African-American residents to 2.817% and reduce the percentage of Hispanics to 1.9388% in the qualified wheel.

-4-

the defendant had established a _prima_ _facie_ fair cross-section violation.  See id. at 979.

Based on Osorio, the petitioners in this case amended their appeals to assert a fair cross-section violation.  They argued that their Sixth Amendment rights were violated because the same defect that existed in the Osorio qualified wheel in August 1992, also existed in April 1991, when their jury was selected, and that their petit jury suffered from the same substantial underrepresentation of African-Americans and Hispanics as did the grand jury in Osorio.  The Second Circuit, however, declined to address the issue because it had not been raised in the trial court and there was an inadequate basis to resolve it on appeal. See United States v. Bianco, 998 F.2d 1112, 1115 (2d Cir. 1993). The court "left the issue to be pursued through whatever post-conviction remedies that [the petitioners] might still have available to them."  Id. at 1114.  The court noted, however, that Osorio "may well be distinguishable, because it was based on a timely pretrial challenge to the juror selection process."  Id. at 1114.  Thereafter, the petitioners filed this habeas petition raising for the first time their challenge to the racial composition of the qualified wheel from which their petit jury was selected.

<u>STANDARD OF REVIEW</u>

The grounds for collateral review of criminal convictions

under § 2255 are narrow and limited.  As the Supreme Court has explained, it has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.  See United States v. Addonizio, 442 U.S. 178, 184 (1979) (noting that the reasons for narrowly limiting collateral attacks are "well known and basic to our adversary system of justice.").  To obtain collateral relief, a habeas petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 164 (1982).  That hurdle is even higher where the claims asserted by a habeas petitioner have been procedurally defaulted.  See e.g., id. at 167; Wainwright v. Sykes, 433 U.S. 72, 87 (1977) (adopting a cause and prejudice requirement for all petitioners seeking federal habeas relief on procedurally-defaulted constitutional claims).

Challenges to the racial composition of a jury must be made prior to trial.  See Fed. R. Crim. P. 12(b)(2).  If not, the claim is deemed to be waived, or procedurally defaulted.  See e.g., Davis v. United States, 411 U.S. 233, 243-45 (1973) (holding that the waiver provision of Fed. R. Crim. P. 12(b)(2) bars an untimely claim of jury discrimination, not only during the criminal proceedings, but also on collateral review absent a showing of cause and actual prejudice); Shotwell Mfg. Co. v. United States, 371 U.S. 341 (1963) (confirming that Rule 12(b)(2)

-6-

precludes untimely challenges to jury arrays even when such challenges are on constitutional grounds).  Thus, for a habeas petitioner to obtain collateral review of a procedurally-defaulted fair cross-section claim, he must first show (1) cause excusing the procedural default and (2) actual prejudice resulting from the errors of which he complains.  E.g., Wainwright v. Sykes, 433 U.S. at 87; Francis v. Henderson, 425 U.S. 536, 542 (1976).  "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."  Massaro v. United States, 538 U.S. 500, 504 (2003).

DISCUSSION

Because the petitioners did not raise their fair cross-section claim before trial, this procedurally-defaulted claim can only be reviewed in this § 2255 proceeding if the petitioners establish the required cause and prejudice.[3]  The petitioners maintain that they can overcome this procedural hurdle.  The court, however, disagrees and accordingly denies the petitioners'

---

[3]There is no merit to the petitioners' argument that the objections they made to the court's decision to withhold disclosure of the address information for prospective jurors were adequate to preserve the right to full review of their jury composition claim.  They offer no authority, nor can the court find any, to support the proposition that an objection to an anonymous jury is tantamount to a Rule 12(b)(2) motion asserting a Sixth Amendment and JSSA fair cross-section violation.

claim for habeas relief based on the alleged violation of their fair cross-section rights under both the Sixth Amendment and the JSSA without considering the claim on its merits.

A.   Cause

The fact that counsel failed to recognize the factual or legal basis for a claim, or knew of the claim but decided not to raise it, does not constitute cause to excuse a procedural default.  See Engle v. Issac, 456 U.S. 107, 133-34 (1982). Rather, existence of such cause turns on whether there was some objective factor external to the defense that impeded counsel's efforts to comply with the procedural rule.  See, e.g., Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999); Davis v. United States, 411 U.S. at 243-44.  For instance, cause may be established by "a showing that the factual or legal basis for the claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable. . . ."  Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Cause may also be established where the factual basis of the claim was not reasonably discoverable because it was deliberately concealed by officials.  See Amadeo v. Zant, 486 U.S. 214, 223 (1988).

There is no merit to the petitioners' assertion that the required cause to excuse their procedural default is established because the court's interference, in the form of an order that the residence addresses of the venire members not be disclosed to

-8-

the defense,[4] made it impracticable for them to timely raise

their fair cross-section claim before trial.[5]

_____

[4]Prior to jury selection in the petitioners' case, the government moved for an anonymous jury -- one in which the names, addresses and place of employment of the venire members was not disclosed.  The petitioners objected.  They argued that this "surface data" was needed to uncover bias and attitude, and to help them exercise their peremptory challenges and ensure a fair and impartial jury.  They claimed that a person's name revealed nationality and ethnic background and possibly religion, and that a person's residence could also reveal attitude and state of mind.  As an alternative to a totally anonymous jury, petitioners' counsel suggested that only the street address and place of employment be withheld.  The court ruled that the venire members' names and counties of residence would be disclosed, but not their street addresses, cities or towns of residence, or places of employment.

[5]In support of this claim the petitioners rely on the testimony of F. Mac Buckley, an experienced federal criminal-defense attorney in the Hartford area, who represented one of the petitioners at trial.  Buckley testified that neither he nor any of the other ten defense attorneys were aware that the jury composition system in the Hartford division was malfunctioning, but that if he had known the residence addresses of the members of the venire he would have noticed that none of them were from Hartford or New Britain and would have filed a challenge to the venires.  In apparent contradiction of that assertion, Buckley testified that he and the other defense counsel noticed that there was only one African-American on the venire, but that fact did not cause him to raise a fair cross-section challenge.  Buckley acknowledged, however, that if he had wanted to do so, he could have examined the questionnaires of the individuals whose names were in the qualified wheel.
      The government maintains that Buckley's testimony should not be credited because, <u>inter alia</u>, he testified that he was involved in jury selection in a number of other cases after the petitioners' trial and before <u>Osorio</u> in which the venire members' addresses were disclosed, but he did not raise any challenges based on the absence of minority representation in the venires in those cases.  The government also points out that according to his testimony, Buckley had little or no understanding of what towns were included in the Hartford division or their demographics, and did not know the population of the towns or of the division as a whole, and argues that without such

Nonetheless, even if, as the petitioners argue, the court's order prevented them from knowing where the venire members lived, such residence information is not a necessary prerequisite to a fair cross-section claim and thus the court's order could not be the type of interference that excuses a procedural default. Indeed, the names, addresses and other demographic information about members of grand juries are not disclosed, see In re Grand Jury Investigation, 903 F.2d 180 (3d Cir. 1990), yet the lack of such information did not impede the ability of counsel to timely challenge the minority representation of their clients' grand juries in numerous other cases in this circuit both before the petitioner's trial, notably United States v. Biaggi, 680 F. Supp. 641, 648 (S.D.N.Y. 1988) (raising a fair cross-section challenge to the grand jury based on use of voter registration lists), and United States v. Gerena, 677 F. Supp. 1266 (D. Conn. 1987) (challenging minority representation on defendants' grand jury in Hartford), and after, in Osorio, 801 F. Supp. at 966 (challenging the racial and ethnic make-up of the grand jury in

---

information, it would have been impossible for Buckley or anyone else to know how many Hartford and New Britain residents should have been in the venire or to conclude that the absence of Hartford and New Britain residents from the venire was statistically likely or unlikely.

The court finds the government's arguments as to Buckley's testimony to be persuasive and accordingly gives it no weight amd does not credit Buckley's assertion that, but for the anonymous jury, he would have raised a fair cross- section challenge before trial.

Hartford).

Further, it cannot be said that the factual basis of the petitioners' defaulted claim was deliberately concealed by court officials and thus this case does not fall within the rule of Amadeo v. Zant, 486 U.S. 214 (1988).

Similarly unavailing is the petitioners' argument that the factual basis of their fair cross-section claim was not notorious or available, but was discoverable only by an extensive investigation and intensive analysis of a kind and degree that is beyond the capabilities of most criminal defendants.  Not only does this assertion ignore the plain fact that the factual basis of the claim was available to them just as it was to counsel in Osorio, see United States v. Tarascio, 15 F.3d 224, 225 (2d Cir. 1993), it also ignores the well-settled precedent that cause for a procedural default is not established by showing that counsel was unaware of the factual or legal basis of a claim so long as the bases were reasonably available at the time of trial and other defense counsel in other cases had raised and litigated it. See Engle v. Isaac, 456 U.S. at 133-34; cf. Reed v. Ross, 468 U.S. 1, 11 (1984) (holding that cause may be established where a claim is "so novel that its legal basis is not reasonably available to counsel.").  As noted, fair cross-section claims had been raised in other cases in this district and circuit at the time of the petitioners' trial and thus the petitioners'

-11-

claim cannot be labeled "novel."  Nor does unawareness of the
claim's factual basis on the part of their trial counsel serve as
cause for the procedural default.  <u>See</u> <u>Engle</u>, 456 U.S. at 134.
Moreover, it is also unavailing that fair cross-section
challenges had been rejected by other courts in this district and
circuit.  "[F]utility cannot constitute cause if it simply means
that a claim was unacceptable to [a] particular court at [a]
particular time."  <u>Engle</u> at 130, n.35.  Simply put, the court
does not agree with the petitioners' assertion that their trial
counsel did all they reasonably could do to timely assert the
fair cross-section claim before trial.

The court also disagrees with the petitioners' claim that
they should be entitled to a presumption that the system worked
as it had been designed and that they should not have to bear the
burden of the systemic breakdown that resulted in the alleged
underrepresentation.  <u>See</u> <u>United States v. Peck</u>, 829 F. Supp. 555
(D. Conn. 1992) (rejecting the government's argument that
knowledge of the defect in the Hartford wheel should be imputed
to the defendants' lawyers because they could have done what
counsel did in <u>Osorio</u>).  Their reliance on <u>Peck</u>, however, is
misplaced.  Although the petitioners acknowledge that this
court's reasoning in <u>Peck</u> was rejected by the Second Circuit in
<u>Tarascio</u>, 15 F.3d at 224, they argue that <u>Tarascio</u> is not
controlling because its discussion of cause was dicta.  The

-12-

petitioners are mistaken.  _Tarascio_ effectively overruled _Peck_.

In _Tarascio_, the Second Circuit held that the habeas petitioner had not shown either cause or prejudice and that his jury composition claim based on _Osorio_ had been waived.  _See_ _id._ at 225.  In so ruling, the court expressly rejected the petitioner's claim that he was excused from timely raising his challenge to the racial composition of his grand jury before trial because his counsel "absolutely believed" that the court "meticulously complied with the district's jury selection plan" and for that reason, "it did not occur to [him] to question the composition of either the Grand Jury . . . or the composition of the [w]heel."  _Id._  The court noted that the "facts regarding any possible infirmity in the grand jury pool . . . were available to him prior to trial . . . " and thus the petitioner "could have evaluated the publicly available information and raised the challenge . . . prior to his trial, in the same manner as did the defendant in [_Osorio_]."  _Id._  Accordingly, under _Tarascio_, a presumption that the system worked as it had been designed does not satisfy the cause requirement for habeas review of a procedurally-defaulted jury composition claim.  _See_ _id._

Finally, the court is not persuaded by the petitioners' argument that their failure to raise the claim before trial was not deliberate or a stratagem to sandbag the process and thus does not rise to the level of a _Sykes_ procedural default, i.e.,

one that requires a showing of cause and prejudice.  In support

of this claim they rely on Smart v. Scully, 787 F.2d 816, 818

(2d Cir. 1986).  In Smart, the Second Circuit explained that the

heightened barrier for federal habeas review of procedurally-

defaulted state court claims established in Wainwright v. Sykes,

433 U.S. 72 (1977), "was designed to eliminate the tactical

benefit which might be derived from the stratagem of

'sandbagging,' which contemplates that a deliberate default would

allow a defendant in a criminal case the opportunity to avoid a

ruling, take a chance on gaining an acquittal, but failing that,

preserve the opportunity to attempt to gain a new trial later by

federal habeas review based upon some claimed shortcoming. . . ."

Id.  The petitioners misread Smart as supporting their claim that

habeas review of their defaulted claim is required in the absence

of a showing of cause because their procedural default was not

deliberate.

Smart involved a state habeas petitioner's claim that his

guilty plea was involuntary.  But because the petitioner had

failed to comply  with a state-procedural rule that required

moving papers alleging an involuntary guilty plea be accompanied

by sworn allegations setting forth the facts supporting the

claimed incapacity, his federal habeas claim was dismissed as

procedurally defaulted.  On appeal, the Second Circuit, noting

that the petitioner's pleading was sufficient to give the state

court notice of the nature of his constitutional claim, ruled
that his failure to comply with the state procedural rule did not
constitute a procedural default within the meaning of Sykes
because it did not entail the failure to raise a constitutional
claim timely or the failure to utilize the appropriate procedural
vehicle to raise such a claim.  See id. at 819-20.  Contrary to
the petitioners' expansive reading of Smart, the court did not
hold that federal habeas review of all procedurally-defaulted
constitutional claims is required unless the procedural default
was deliberate.  Rather, it held that if "a state defendant's
failure [to timely or properly raise a claim] does not rise to
the level of a Sykes procedural default . . . habeas review must
occur unless the error was deliberate."  Id.  Thus, Smart does
not change the conclusion that the petitioners' failure to timely
raise their constitutional claim is a Sykes procedural default
and as such requires a showing of both cause and prejudice.

     The petitioners have simply not made the required showing of
cause for their failure to timely raise the fair cross-section
constitutional claim prior to trial as required by the federal
rules.  There was no objective factor external to the defense
that prevented their counsel from discovering and timely raising
the claim, the factual basis of the claim was notorious and
available to them before trial, and they had a reasonable
opportunity to discovery and timely assert it.  Accordingly, the

claim cannot be considered on the merits in this § 2255 habeas petition.

B.    Prejudice

Nonetheless, even if the petitioners could establish cause, they would not be entitled to habeas review of the procedurally-defaulted fair cross-section claim because they cannot establish the essential element of prejudice.

To establish the required prejudice a habeas petitioner must "shoulder the burden of showing not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." Murray v. Carrier, 477 U.S. 478, 494 (1986).

Here, the government argues that, because the court rejected the testimony of the petitioners' expert witness, the petitioners are not able to show actual prejudice -- a reasonable probability that the result of the trial would have been different if the jury composition claim had been timely raised. The government also claims that prejudice cannot be presumed even where there is an allegation of improper jury composition.

-16-

According to the petitioners, under <u>Strickler v. Greene</u>, 527 U.S. 263 (1999) and <u>Banks v. Dretke</u>, 540 U.S. 668 (2004), they are not required to establish "actual" prejudice. Rather, they claim that where, as here, the underlying error is structural and exempt from harmless error analysis, prejudice to excuse a procedural default is established by the same proof that establishes the right to relief on the merits of the underlying claim. In other words, they maintain that, because of the structural nature of their jury composition claim, they are entitled to a presumption of prejudice. Alternatively, the petitioners argue that, because the residence information of potential jurors was not disclosed, their trial counsel were prevented from discharging their adversary function, and as a result, the adversary process itself was rendered presumptively unreliable and they are entitled to relief without proof of specific prejudice arising from the error. None of the petitioners' arguments are persuasive.

First, there is no merit to their claim that they are excused from showing actual prejudice because of the structural nature of their alleged constitutional error. The seriousness of a constitutional claim does not alter the rules governing procedural default. According to the Supreme Court, "[w]hile the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make

that threshold showing. . . .  [A]ny prisoner bringing a
constitutional claim to the federal courthouse after a . . .
procedural default must demonstrate cause and actual prejudice
before obtaining relief."  Engle v. Isaac, 456 U.S. at 127.
Thus, even though the petitioners' jury composition claim may
involve a structural error,[6] there is no authority that
recognizes "structural error" as an exception to the cause and
prejudice requirement for procedurally-defaulted constitutional
claims.  See Hatcher v. Hopkins, 256 F.3d 761, 763-64 (8th Cir.
2001) (noting that in Coleman v. Thompson, 501 U.S. 722, 729
(1991), the Supreme Court detailed the circumstances necessary to
by-pass a procedural default and that "structural error" was not
listed).  Indeed, in Francis v. Henderson, where the alleged
underlying constitutional error was racial discrimination in the
selection of a grand jury, the Supreme Court declined to presume
prejudice to overcome the procedural bar.  See 425 U.S. at 536.

---

[6]As the Supreme Court has observed, structural errors occur
in only a "very limited class of cases."  Johnson v. United
States, 520 U.S. 461, 468 (1997).  Structural errors are those
that "affect the framework within which the trial proceeds,"
Arizona v. Fulminante, 499 U.S. 279, 307-10 (1991), and that "so
fundamentally undermine the fairness or the validity of the trial
that they require voiding [the] result regardless of identifiable
prejudice."  Yarborough v. Keane, 101 F.3d 894, 897 (2d Cir.
1996).  Structural errors that the Supreme Court has identified
are the complete deprivation of counsel, a biased trial judge,
racial discrimination in the selection of a grand jury, denial of
self-representation at trial, denial of a public trial, and a
defective reasonable doubt instruction.  See Neder v. United
States, 527 U.S. 1, 8 (1999).

The fact that prejudice may be presumed where there is an allegation of racial discrimination in the composition of a jury is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily-provided waiver for failure to assert such a claim in a timely manner. See Davis v. United States, 41 U.S. at 244-45.  Despite petitioners' claims to the contrary, in a habeas petition, a federal court cannot review even structural errors that have been procedurally defaulted without a showing of actual prejudice. See Mazzariello v. Phillips, No. 04Civ2224(AKH), 2005 WL 1661096, at *4 (S.D.N.Y. July 14, 2005) (citing Ward v. Hinsley, 377 F.3d 719, 725 (7th Cir. 2004)).

Second, the same is true with regard to the petitioners' claim that they are entitled to a presumption of prejudice because their trial counsel were unable to discharge their adversary duties as a result of the court's order barring disclosure of the prospective jurors' addresses.  As previously discussed, the court's order did not prevent counsel from raising the fair cross-section claim.  Moreover, such circumstances fall far short of the magnitude of error that is required for a Sixth Amendment deprivation of counsel violation to constitute constitutional error without a showing of prejudice.  See Bell v. Cone, 535 U.S. 685, 695-96 & n.3 (2002) (noting that a Sixth Amendment error can be found without a showing of prejudice only

-19-

where (1) there had been a complete denial of counsel, (2) counsel entirely failed to subject the prosecutor's case to meaningful adversarial testing, (3) counsel was called upon to render assistance under circumstances where competent counsel very likely could not have done so, or (4) government action actually or constructively denied assistance of counsel); see also United States v. Cronic, 466 U.S. 648, 659 (1984) (noting that in circumstances of great magnitude, a Sixth Amendment right to counsel violation may be presumed without inquiry into the actual conduct of the trial).

In sum, the petitioners have not made the required showing of actual prejudice -- that the claimed error in the racial composition of their petit jury worked to their actual and substantial disadvantage and infected their entire trial with error of constitutional dimensions.[7]  See Frady, 456 U.S. at 172. This is simply not one of those extraordinary cases where a constitutional violation has probably resulted in the conviction

---

[7]The petitioners had planned to use the testimony of an expert witness, Dr. Fletcher Blanchard, to establish actual prejudice.  It was that expert's opinion that a racially and ethnically heterogenous jury is less likely to convict a criminal defendant regardless of his race.  However, the court found that Dr. Blanchard's conclusions were not generated by a reliable methodology and were not based on a reliable foundation, but were merely the product of his subjective belief and unsupported speculation.  See Pugliano v. United States, 315 F. Supp. 2d 197, 199 (D. Conn. 2004).  Accordingly, the court ruled that his testimony was inadmissible under Fed. R. Evid. 702.  See id. at 202.

of one who is actually innocent and thus, this court may not
consider the petitioners' constitutional claim in the absence of
a showing of actual prejudice.  See Murray v. Carrier, 477 U.S.
at 496.

     C.    Ineffective Assistance

     Alternatively, the petitioners claim that their procedural
default is excused by ineffective assistance of counsel.  They
argue that, if the court finds that the information needed to
timely raise the jury composition claim was notorious and
available, then their trial counsels' failure to timely raise the
claim constitutes constitutionally-deficient representation.

     "Attorney error short of ineffective assistance of counsel
does not constitute cause for a procedural default. . . ."
Murray v. Carrier, 477 U.S. at 492.  Because counsel may
procedurally default a claim and still provide constitutionally
adequate representation, see id. at 488, ineffective assistance
of counsel will satisfy the cause and prejudice requirement to
excuse a procedural default of a habeas claim only if the
petitioner meets the requirements established in Strickland v.
Washington, 466 U.S. 668 (1984).  See id. ("[s]o long as a
defendant is represented by counsel whose performance is not
constitutionally ineffective under the standard established in
Strickland v. Washington, we discern no inequity in requiring him
to bear the risk of attorney error that results in a procedural

default.").

Accordingly, on collateral review, ineffective assistance of counsel can excuse a procedural default only if counsel's performance was deficient and his errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable.  See Strickland, 466 U.S. at 687.  There are two requirements of an ineffective assistance of counsel claim. First, the petitioner "must prove that counsel's performance fell below an objective standard of reasonableness in that [he] failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances."  Id. at 688.  Second, the petitioner must prove prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Without proof of both deficient performance and prejudice to the defense, . . . it [cannot] be said that the conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable and the sentence or conviction should stand."  See Bell v. Cone, 535 U.S. at 695 (quoting Strickland, 466 U.S. at 687).  To avoid the "distorting effects of hindsight," Strickland, 466 U.S. at 689, a reviewing court evaluating counsel's performance must be highly deferential and must make every effort "to reconstruct the circumstances of

-22-

counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." Id. The petitioner making such a claim must overcome the presumption that the challenged action might be considered sound trial strategy. See id.; see also Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004).

Here, petitioners have failed to meet the requirements of Strickland. Not only have they failed to show constitutionally-deficient representation, they are simply mistaken in their assertion that Strickland's prejudice requirement is met by virtue of the fact that, because their jury-composition claim was meritorious, if it had been properly raised, the problem would have been corrected at the trial level or a new trial would have been ordered on appeal. This argument misconstrues the prejudice that they must show under Strickland -- that, but for their counsels' failure to raise the jury composition claim, the outcome of their trial would likely have been different. If the petitioners' fair cross-section claim had been made prior to trial and had been successful, the case would have been transferred to either the New Haven or Bridgeport division for trial. And, based on the overwhelming evidence of the petitioners' guilt, the verdicts would not have been different if the case had been tried in another seat of court in this District. Cf. United States v. Bianco, 998 F.2d 1112, 1114 (2d Cir. 1993) (stating that the RICO charges against the petitioners

-23-

"were amply supported at trial by evidence that established not only the existence of the [organized crime] enterprise, but also each [petitioner's] participation, or agreement to participate, in at least two of a long list of predicate acts of racketeering activity, including murder, drug trafficking, extortion, obstruction of justice, and gambling" and noting that the petitioners' sufficiency of the evidence claim was so lacking in merit as to be unworthy of discussion).

Accordingly, because the petitioners have not shown that their counsels' action in not raising the jury composition claim before trial was not supported by a reasonable trial strategy and that the error was prejudicial, see Massaro v. United States, 538 U.S. 500, 505 (2003), their claim of ineffective assistance of counsel does not excuse the procedural default of their fair cross-section claim.

<u>CONCLUSION</u>

For the foregoing reasons, the petitioners' are not entitled to relief under 28 U.S.C. § 2255 based on the procedurally-defaulted fair cross-section claim under the Sixth Amendment and the JSSA.

SO ORDERED this 19th day of December, 2005, at Bridgeport, Connecticut.

/s/_____
      Alan H. Nevas
United States District Judge

-24-