UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 DEC 16 P 5: 39
US DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| FRANK A. PUGLIANO | : | Master No. 2:90-CR-18 (AHN) |
| V. | : | Civil No. 3:95CV1330 (AHN) |
| UNITED STATES OF AMERICA | : | |
| LOUIS PUGLIANO | : | |
| V. | : | Civil No. 3:95CV1171 (AHN) |
| UNITED STATES OF AMERICA | : | |
| GAETANO J. MILANO | : | |
| V. | : | Civil No. 3:95CV1145 (AHN) |
| UNITED STATES OF AMERICA | : | |
| FRANK COLANTONI | : | |
| V. | : | |
| UNITED STATES OF AMERICA | : | DECEMBER 16, 2005 |

GOVERNMENT'S RESPONSE TO PETITIONER MILANO'S
RENEWED MOTION FOR LEAVE TO CONDUCT DISCOVERY

The United States of America (hereinafter "Government") respectfully responds to petitioner Gaetano Milano's Renewed Motion for Leave to Conduct Discovery Relating to the Government's Pretrial Confidential Informant Disclosure. For the reasons set forth below, the motion should be denied.

BACKGROUND

The petitioner moves for discovery in the form of Requests for Admission and claims three bases for these request. First,

Milano claims that despite the Government's protestations that Angelo "Sonny" Mercurio was not a percipient witness, the Government allegedly "stated unequivocally" that Mercurio was liable for the Grasso homicide along with Vincent Ferrara. Second, Milano claims that the Government's response to two Interrogatories that the Court permitted in its September 22, 2004 Ruling were inconsistent and evasive. Finally, Milano claims that these latest proposed Requests for Admission are the last step "in pinning down the Government's position with regard to" Mercurio.

As the Government has consistently demonstrated, and again demonstrates herein, Mercurio was not a percipient witness to the Grasso homicide. Thus, every position Milano takes in his motion is based on a defective premise and the motion should be denied in its entirety.

## DISCUSSION

a. **The Government Opposition To Milano's Discovery Request Is Based on Sound Factual and Legal Analysis.**

The petitioner first claims that the Government opposition to his discovery requests is baseless because "when the petitioners have been permitted to conduct the requested discovery over the Government's vehement objection, in every instance it has revealed that the Government's pretrial disclosure that no informants were percipient witnesses to the Grass homicide was false." Pet. Mem. at 4. The petitioner's

2

arguments are unfounded.

For instance, the petitioner claims, Pet. Mem. at 4, that "the Connecticut Office has persisted in its baseless denial while all of the relevant parties, including the Boston Organized Crime Strike Force, have revealed Mr. Mercurio's status as a percipient witness." The Declaration of Assistant United States Attorney James D. Herbert refutes this claim. In his Declaration, AUSA Herbert states as follows:

> 5. I have been involved in several cases in which the murder of Grasso and the attempted murder of Francis P. Salemme have been in issue, and I have been exposed to a great deal of information about those crimes. In preparing this affidavit, I have reviewed what I believe to be pertinent portions of hearing testimony from the <u>Salemme</u> case and have reviewed the Affidavit of Special Agent Walter J. Steffens, Jr. in support of the application for the electronic surveillance order which led to the interception of the induction ceremony on October 29, 1989 ("Steffens Affidavit"). Based on that review and my memory, I am not aware of any evidence that Mercurio was a participant in the murder of Grasso or was a percipient witness to that murder. I am also not aware of any confidential informant who identified Mercurio by name as a participant in the planning for the Grasso murder. The Steffens Affidavit states that an informant identified as CS-3 reported that the Providence LCN faction believed in late July, 1989 that "FERRARA along with Capos JOE RUSSO, BOBBY CARROZZA and soldier Angelo Mercurio set up a strategy to kill underboss William Grasso and soldier Frank Salemme whom they felt were responsible for all the friction within the family." This mention of Mercurio in the Steffens Affidavit, however, appears to have been in error. I have reviewed the original informant reports from CS-3 that would have formed the basis for the above information in the Steffens Affidavit, and it appears that CS-3 did not mention Mercurio by name in connection with the Grasso murder. Instead, the informant reported that the Providence LCN faction believed that "Joe Russo and his people" were behind

>   the Grasso murder and that "Grasso was killed by
>   Connecticut LCN members." According to these reports,
>   CS-3 only mentioned Mercurio by name as the one who set
>   up the meeting with Salemme when he was shot. It is
>   worth noting also that the information in this regard
>   attributed to CS-3 in the Steffens Affidavit reflects
>   the events the Providence LCN faction believed, in July
>   1989, had caused the recent shootings in Boston and
>   Connecticut. As such, it did not reflect CS-3's
>   personal knowledge as to those events but rather what
>   the Providence faction believed to have been the
>   causes.

Herbert Declaration at ¶ 5. Thus, the petitioner's efforts to paint the Boston Strike Force as supporting his claim are unfounded and the Government's efforts to oppose them are grounded in well-established legal precedent supported by the facts of this case.

     b. **The Government's Reports Do Not Reveal Mercurio's Involvement in the Grasso Homicide.**

The petitioner next claims that Government reports indicate that the Government fomented the factional warfare between the feuding LCN factions and that Mercurio was involved in these actions as well as the planning for the Grasso murder. Frankly, this is nothing more that a recycling of earlier claims that the Government has already addressed.

Specifically, the Government addressed the Petitioner's claims that the Government was involved in those actions in its June 29, 2001 dated "Government's Response to Petitioner Milano's Motion to Compel Defense Witness Immunity." The Government will not elaborate on its earlier filing but respectfully directs the

Court's attention to pages 2 through 14 of the Government's response.

### c. Judge Kottmyer Has Stated Unequivocally Her Assumptions Concerning Mercurio's Involvement in the Grasso Homicide.

The Petitioner next claims that Judge Kottmyer testified that Mercurio was a key witness, target and participant in the Grasso homicide. The Government respectfully directs the Court's attention to its June 29, 2001 Response at pages 14 through 18. That discussion places Judge Kottmyer's testimony in the proper context. Further, Judge Kottmyer's affidavit, previously submitted to the Court, as well as her deposition testimony, demonstrate that the Petitioner's claims regarding Judge Kottmyer are unavailing. The Government will not repeat that discussion here but instead directs the Court to the Government's discussion of that issue at pages 6 through 20 of the Government's June 25, 2004 Government's Response to Petitioner Milano's Motion for Leave to Conduct Discovery. In that discussion the Government clearly refutes the Petitioner's claim.

### d. The Petitioner's Claim That Judge Wolf Found That Mercurio Was Involved in the Grasso Homicide Is Misguided.

The Government has addressed this issue in some depth previously and will not repeat that discussion again here. The Government respectfully directs the Court's attention to its June 25, 2004 Government's Response to Petitioner Milano's Motion for

Leave to Conduct Discovery at pages 13 through 18. There, Judge Kottmyer again explained the information gathered concerning Mercurio's alleged involvement in the Salemme shooting and her assumptions concerning Mercurio's knowledge of the Grasso homicide. Importantly, her specific information was with respect to Salemme, not Grasso.

And while Judge Wolf does discuss Mercurio and Grasso in the context of Mercurio's continued use as an informant, Judge Wolf also discusses the information concerning Mercurio's role in the Salemme shooting. See, e.g., United States v. Salemme, 91 F.Supp.2ed 141, 269 (D. Mass. 1999), rev'd in part, United States v. Flemmi, 225 F.3d 78 (1st Cir. 2000) ("When Kottmyer later learned of the reliable report of Mercurio's involvement in the Salemme shooting she asked Ring whether it presented a problem under the Attorney General's Guidelines. Kottmyer Aug. 14, 1998 Tr. at 180-81. Ring told her that it did not. Id.").

    e.    **The Petitioner's Claim That The Boston Strike Force Acknowledged Mercurio's Role in the Grasso Homicide Continues His Effort to Selectively Discuss and Interpret Remarks and Previous Testimony That Actually Do Not Support His Claim.**

The Petitioner next claims that statements made by AUSA Herbert at the re-sentencing of Vincent Ferrara eliminated all doubt that Mercurio was a percipient witness. Nothing could be further than the truth.

As AUSA Herbert noted in his Declaration:

3. At the Ferrara re-sentencing hearing on May 3, 2005, I argued on behalf of the government that in calculating Ferrara's Guidelines before consideration of departures, the murder of William Grasso should be attributed to Ferrara as relevant conduct under U.S.S.G. § 1B1.3. While making the point that Ferrara, and his co-defendants, Joseph Russo and Robert Carrozza, were culpable for the Grasso murder and were sufficiently concerned about their liability to bargain for a non-prosecution agreement in their plea agreements, the court asked, "What about Mercurio?" May 3, 2005 Tr. at 64. I replied that "Mercurio would have been liable as well," but went on to explain that Russo, Carrozza, and Ferrara were the ones who were sufficiently concerned about their exposure on that crime to bargain for a non-prosecution agreement. Id.

4. When I said Mercurio would have been liable as well, I was referring to liability for sentencing purposes under § 1B1.3. As a member of the enterprise alleged in the RICO conspiracy count to which he pled guilty, Mercurio was liable for uncharged racketeering acts which were within the scope of his conspiratorial agreement and were reasonably foreseeable, whether or not he participated in those acts or even knew about them. See United States v. Carrozza, 4 F.3d 70 (1st Cir. 1993).

5. I have been involved in several cases in which the murder of Grasso and the attempted murder of Francis P. Salemme have been in issue, and I have been exposed to a great deal of information about those crimes. In preparing this affidavit, I have reviewed what I believe to be pertinent portions of hearing testimony from the Salemme case and have reviewed the Affidavit of Special Agent Walter J. Steffens, Jr. in support of the application for the electronic surveillance order which led to the interception of the induction ceremony on October 29, 1989 ("Steffens Affidavit"). Based on that review and my memory, I am not aware of any evidence that Mercurio was a participant in the murder of Grasso or was a percipient witness to that murder. I am also not aware of any confidential informant who identified Mercurio by name as a participant in the planning for the Grasso murder. The Steffens Affidavit states that an informant identified as CS-3 reported that the Providence LCN faction believed in late July, 1989 that "FERRARA along with Capos JOE RUSSO, BOBBY

> CARROZZA and soldier Angelo Mercurio set up a strategy to kill underboss William Grasso and soldier Frank Salemme whom they felt were responsible for all the friction within the family." This mention of Mercurio in the Steffens Affidavit, however, appears to have been in error. I have reviewed the original informant reports from CS-3 that would have formed the basis for the above information in the Steffens Affidavit, and it appears that CS-3 did not mention Mercurio by name in connection with the Grasso murder. Instead, the informant reported that the Providence LCN faction believed that "Joe Russo and his people" were behind the Grasso murder and that "Grasso was killed by Connecticut LCN members." According to these reports, CS-3 only mentioned Mercurio by name as the one who set up the meeting with Salemme when he was shot. It is worth noting also that the information in this regard attributed to CS-3 in the Steffens Affidavit reflects the events the Providence LCN faction believed, in July 1989, had caused the recent shootings in Boston and Connecticut. As such, it did not reflect CS-3's personal knowledge as to those events but rather what the Providence faction believed to have been the causes.

Herbert Declaration at ¶¶ 3-5.

Thus, there can be no doubt now that, despite the Petitioner's claims otherwise, the Boston Strike Force did not view Mercurio as a percipient witness to the Grasso homicide. Indeed, the evidence reviewed by AUSA Herbert also demonstrates that Mercurio's alleged involvement was based on errors and assumptions - assumptions made by the Providence faction and assumptions made by Judge Kottmyer - but there is no evidence that Mercurio actually was involved in the planning of the Grasso homicide. In fact, the evidence this Court has seen undercuts those assumptions and demonstrates the exact opposite.

### f. The Government's Response to the Court Ordered Interrogatories Was Honest and Appropriate.

Of course, the Petitioner's claim that the Government continues its pattern of false denial in Judge Devlin's response to the earlier interrogatories is difficult to defend against. This is particularly true when the Court considers the petitioner's claim that Judge Devlin didn't even mention Mercurio in his response. Indeed, if Judge Devlin had mentioned Mercurio, the Petitioner would have spun it the other way. As noted so many times earlier, and as supported by Judge Kottmyer testimony and affidavit and by AUSA Herbert's declaration, the Government had no indication that Mercurio was a percipient witness to the Grasso homicide. Indeed, all evidence supports this Court's finding that Mercurio was not a percipient witness to the Grasso homicide.

### g. Good Cause Does Not Exist to Continue Discovery.

For all of the reasons set forth above and in the Government's earlier responses, good cause does not exist to continue discovery in this matter. As the Court noted at the motion hearing on September 13, 2004, when the petitioner was interviewed prior to his sentencing he had ample opportunity to bring his "kill or be killed" claim to the FBI's attention. He did not. Instead, the Petitioner said, as the Court noted, that Boston said they wanted Grasso dead and they said "Do you wanna do it? If you don't wanna do it, we'll get somebody else to do

it." And he said, "I'll do it." Transcript of September 13, 2004 Motion Hearing, at 110. The Petitioner's entire claim now rests on the kill or be killed theory. The evidence does not support that theory. As such, further discovery will not advance the Petitioner's cause and thus good cause does not exist. The motion for discovery should be denied and the Court should reject the Petitioner's substantive arguments and dismiss the petition.

## CONCLUSION

For the reasons set forth above and in all of the Government's prior filings and submissions to the Court, the petitioner's motion for discovery should be denied.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JOHN H. DURHAM
DEPUTY UNITED STATES ATTORNEY
Federal Bar No. ct05087


PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct03192

JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct15565
157 CHURCH STREET
NEW HAVEN, CT 06510
(203) 821-3700

CERTIFICATE OF SERVICE

This is to certify that on December 19, 2005, a copy of the foregoing was sent by United States Mail, postage prepaid, to:

John M. Thompson, Esq.
1331 Main Street, Suite 320
Springfield, Massachusetts  01103
(Counsel for Louis Pugliano)

Vincent Bongiorni, Esq.
95 State Street
Springfield, Massachusetts 01103
(Counsel for Frank Pugliano)

Craig A. Raabe, Esq.
Robinson & Cole
One Commercial plaza
Hartford, Connecticut 06103-3597
(Counsel for Gaetano Milano)

Michael Fitzpatrick, Esq.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
(Counsel for Frank Colantoni)

JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY

11