## DECLARATION OF JAMES D. HERBERT

I, James D. Herbert, declare as follows:

1. I have been an Assistant U.S. Attorney in the District of Massachusetts since 1990. I am currently Chief of the Organized Crime Strike Force Unit.

2. I was part of the prosecution team in the case of United States v. Robert F. Carrozza, et al., Cr. No. 89-289-MLW, in which Vincent M. Ferrara and Angelo J. "Sonny" Mercurio were co-defendants. I also represented the government at the re-sentencing of Vincent M. Ferrara in the above case as a result of his successful petition under 28 U.S.C. § 2255. In addition, I was part of the prosecution team in the United States v. Francis P. Salemme, et al., Cr. No. 94-10287-MLW.

3. At the Ferrara re-sentencing hearing on May 3, 2005, I argued on behalf of the government that in calculating Ferrara's Guidelines before consideration of departures, the murder of William Grasso should be attributed to Ferrara as relevant conduct under U.S.S.G. § 1B1.3. While making the point that Ferrara, and his co-defendants, Joseph Russo and Robert Carrozza, were culpable for the Grasso murder and were sufficiently concerned about their liability to bargain for a non-prosecution agreement in their plea agreements, the court asked, "What about Mercurio?" May 3, 2005 Tr. at 64. I replied that "Mercurio would have been liable as well," but went on to explain that Russo, Carrozza, and Ferrara were the ones who were sufficiently

concerned about their exposure on that crime to bargain for a non-prosecution agreement. Id.

4. When I said Mercurio would have been liable as well, I was referring to liability for sentencing purposes under § 1B1.3. As a member of the enterprise alleged in the RICO conspiracy count to which he pled guilty, Mercurio was liable for uncharged racketeering acts which were within the scope of his conspiratorial agreement and were reasonably foreseeable, whether or not he participated in those acts or even knew about them. See United States v. Carrozza, 4 F.3d 70 (1st Cir. 1993).

5. I have been involved in several cases in which the murder of Grasso and the attempted murder of Francis P. Salemme have been in issue, and I have been exposed to a great deal of information about those crimes. In preparing this affidavit, I have reviewed what I believe to be pertinent portions of hearing testimony from the Salemme case and have reviewed the Affidavit of Special Agent Walter J. Steffens, Jr. in support of the application for the electronic surveillance order which led to the interception of the induction ceremony on October 29, 1989 ("Steffens Affidavit"). Based on that review and my memory, I am not aware of any evidence that Mercurio was a participant in the murder of Grasso or was a percipient witness to that murder. I am also not aware of any confidential informant who identified Mercurio by name as a participant in the planning for the Grasso murder. The Steffens Affidavit states that an informant

identified as CS-3 reported that the Providence LCN faction believed in late July, 1989 that "FERRARA along with Capos JOE RUSSO, BOBBY CARROZZA and soldier Angelo Mercurio set up a strategy to kill underboss William Grasso and soldier Frank Salemme whom they felt were responsible for all the friction within the family." This mention of Mercurio in the Steffens Affidavit, however, appears to have been in error. I have reviewed the original informant reports from CS-3 that would have formed the basis for the above information in the Steffens Affidavit, and it appears that CS-3 did not mention Mercurio by name in connection with the Grasso murder. Instead, the informant reported that the Providence LCN faction believed that "Joe Russo and his people" were behind the Grasso murder and that "Grasso was killed by Connecticut LCN members." According to these reports, CS-3 only mentioned Mercurio by name as the one who set up the meeting with Salemme when he was shot. It is worth noting also that the information in this regard attributed to CS-3 in the Steffens Affidavit reflects the events the Providence LCN faction believed, in July 1989, had caused the recent shootings in Boston and Connecticut. As such, it did not reflect CS-3's personal knowledge as to those events but rather what the Providence faction believed to have been the causes.

6. I am aware that Mercurio was closely associated with Russo, Ferrara, and Carrozza, and was considered part of their faction at the time. While I was not employed in the U.S.

Attorney's Office at the time, and, therefore, was not involved in the grand jury investigation leading up to the 1989 indictment of Ferrara, Russo, Carrozza, Mercurio, and others, it is my understanding that some or all of those conducting that investigation subjectively believed or assumed that Mercurio was involved in at least the planning of the Salemme shooting and the Grasso murder. This belief was apparently based on information from confidential informants, i.e., informants who were not willing to testify, to the effect that the faction of which Mercurio was a part was responsible for the Grasso murder and the Salemme shooting. I am also aware that Mercurio provided information to the FBI about the Salemme shooting and the Grasso murder after those crimes occurred. Based on the foregoing, if Mercurio had been willing to testify, he would have been expected to have been able to provide evidence of value with respect to these crimes. However, it is my understanding that Mercurio had refused to testify until he was called as a witness by Judge Wolf during the Salemme hearings and even then was only willing to offer testimony about certain subjects.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, memory and belief. Signed this 16th day of December, 2005.

_____
James D. Herbert
Assistant U.S. Attorney